Richard A. LICHT et al.,

v.

Rocco QUATTROCCHI et al.

No. 82–259–Appeal.

Supreme Court of Rhode Island.

Dec. 31, 1982.

See also R.I., 449 A2d 887, and 449 A.2d 888.

Mandell, Aisenberg & Goodman, Ltd., Mark S. Mandell, Martin W. Aisenberg, Jay S. Goodman, Vetter & White, George M. Vetter, Jr., Benjamin V. White III, Letts, Quinn & Licht, Richard A. Licht, Providence, for plaintiffs.

Dennis J. Roberts II, Atty. Gen., Donald G. Elbert, Jr., Sp. Asst. Atty. Gen., Edward L. Maggiacomo, John F. Bomster, Robert D. Wieck, Anthony J. Bucci, Tillinghast, Collins & Graham, Peter J. McGinn, Normand G. Benoit, John M. Boehnert, Edwards & Angell, Robert G. Flanders, Providence, John V. Kenny, Peace Dale, for defendants.

## OPINION

WEISBERGER, Justice.

This case came before us on appeal from a judgment entered in the Superior Court declaring an act passed by the General Assembly, P.L.1982, ch. 20, purporting to reapportion and redistrict the Rhode Island Senate, to be unconstitutional. The judgment further enjoined the Secretary of State and the Board of Elections from accepting declarations of candidacy or preparing for elections of members of the Rhode Island Senate until such time as the Rhode Island General Assembly should enact a senate-redistricting plan that meets the requirements of the State and Federal Constitutions, and is consistent with the findings of fact and conclusions of law set forth in the decision of the trial justice. This injunction clearly contemplated the retention of jurisdiction in order that the trial court might implement compliance with its orders. The judgment was entered June 3, 1982,[1] after extensive hearings before the Superior Court.

The defendants filed timely notices of appeal. Because of the perceived necessity to accelerate the appellate process in the hope that an appropriate reapportionment plan might be prepared in time for the November election of 1982, a single justice

1. The Superior Court had acted with great dispatch in order to hear and determine this case, since the complaint was dated April 20, 1982.

of this court, in response to a motion for speedy hearing, met with counsel for all interested parties and established an expedited briefing and argument schedule. Under this schedule, counsel for all parties were required to file briefs on or before June 29, 1982, and were allowed to file reply briefs on or before July 2, 1982. It was further provided that oral arguments would be heard on July 6, 1982.

After hearing arguments of counsel and considering the briefs filed, this court rendered an immediate decision by order on July 7, 1982, 449 A.2d 887. The order affirmed the judgment of the Superior Court and indicated that an opinion would follow, setting forth the reasons underlying the order.

It should be noted at this juncture that the complaint filed by plaintiffs was a class action brought on behalf of the named plaintiffs individually and on behalf of all persons registered to vote in the State of Rhode Island. It should further be noted that the complaint raised claims based upon the State and Federal Constitutions and also upon the Civil Rights Act of 1871, 42 U.S.C.A. §§ 1983 and 1985(3) (1981). It has, of course, been well established and recently recognized by the Supreme Court of the United States that state and federal courts have concurrent jurisdiction to try and to determine cases arising under the Civil Rights Act. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). It is also quite obvious from this brief description of the travel of the case that the Superior Court and this court acted with vigor and extreme promptness in carrying out a full judicial response to the proposed senate-reapportionment controversy.

After the order of this court was entered affirming the judgment of the Superior Court, the General Assembly was called into special session and enacted a second redistricting plan. Thereafter, on July 22, 1982, the Governor of the State of Rhode Island, acting pursuant to art. XII, sec. 2, of the amendments to the Rhode Island Constitution, asked the justices of this court whether in their opinion the June 3, 1982 judgment nullified P.L.1982, ch. 20, § 1. This section had purported to repeal an act passed in 1974 which provided for reapportionment and redistricting of the senate and which had thereafter been in effect and codified as G.L. 1956 (1979 Reenactment) §§ 22–1–1 and 22–1–2. The 1974 statute had been effective from January 1975 until it was repealed by P.L.1982, ch. 20, § 1. The Governor requested a speedy response because of the pressures of time.

After hearing oral argument by counsel for all parties, three of the five justices who were available to respond to the Governor's request sent a written reply on July 23, 1982. In this reply a majority advised the Governor that the judgment of the Superior Court invalidating the provisions of chapter 20 pertaining to senate reapportionment had the effect of nullifying the repeal of the prior statutory provisions relating to the composition of the senate and of the senatorial districts and all other statutory provisions relating thereto. The advice of the majority of the justices concluded:

> "Consequently, in our opinion, until the General Assembly acts to redistrict the Senate in accordance with the terms of the judgment of the Superior Court, in order to avoid a vacuum in the electoral process relating to the Senate, it is our determination that the provisions of G.L. 1956 (1979 Reenactment) §§ 22–1–1 and –2 are and continue to be valid and subsisting."

One justice disagreed and advised the Governor that the constitutional infirmity of P.L.1982, ch. 20, in respect to senate redistricting did not revive the 1974 statute.

At the oral argument concerning advice to be given in response to the Governor's request, the Attorney General presented a conditional motion to modify the judgment of the Superior Court entered on June 3, 1982, and affirmed by this court on July 7, 1982. The Attorney General requested that this court lift the injunctions contained in

paragraphs 3 and 4 of the judgment in order to permit the Secretary of State and the Board of Elections to take all actions necessary to conduct a primary and general election of Rhode Island state senators pursuant to the provisions of §§ 22–1–1 and 22–1–2. This request was based upon the assumption that these provisions were revived by the declaration of constitutional infirmity of P.L.1982, ch. 20, § 1, as it related to the redistricting of the senate. When confronted with this request, the three justices of this court asked for comment from counsel for all of the parties and from amici curiae to advise the court of their reaction to the proposal. All of the attorneys present who represented parties in respect to the senate-redistricting controversy stated to the court that the Attorney General's proposal presented the best of all available alternatives.[2] Max Wistow, Esquire, who was then representing the Republican Party, Senator Sapinsley, and Representative Willis, made the following statement:

"We would consider that if the thrust of the request for the advisory opinion is intended towards an election based on the 1974 reapportionment of the Senate that we would agree that does represent a malapportioned legislature but under the totality of the circumstances it is probably the least of all the evils available, at this time."

He then advised the court that it would be appropriate to answer the question propounded by the Governor in the affirmative.

Throughout this hearing it was the consensus of counsel representing all parties to the litigation that the doctrine of *Reynolds v. Sims,* 377 U.S. 533, 583–84, 84 S.Ct. 1362, 1392–93, 12 L.Ed.2d 506, 539–40 (1964), required only that a legislature reapportion itself every ten years and that population shifts that might take place in the interim would not render invalid an apportionment statute that had been valid at its inception.

Mr. Wistow expressly agreed to this interpretation of *Reynolds v. Sims.*

After this hearing and the transmission of the response to the Governor, the three justices of the court then available entered an order on July 28, 1982, 449 A.2d 888, which lifted the injunctions as requested by the Attorney General, permitted the Secretary of State to accept declarations of candidacy, and allowed the Board of Elections to prepare for a senate election in accordance with the 1974 statute. In entering this order, the court relied upon: (1) the assertions of counsel that the 1974 districts were constitutionally unchallenged and therefore valid, (2) the agreement of all parties to the litigation that it was constitutionally permissible and physically feasible to hold the 1982 election for the state senate under district lines established in 1974, and (3) the apparent agreement of counsel that the public interest would best be served by going forward with an election under the 1974 senate districts.

At the time the order was entered this court was aware that the Governor had vetoed a second senate-redistricting bill that had been enacted by the General Assembly. Thereafter the General Assembly was called into special session on Thursday, July 29, for the specific purpose of reenacting the redistricting bill that he had vetoed. It was contemplated that the new bill would be identical to the vetoed counterpart in all but one respect. The effective date of the act would be changed so that the act would not take effect until sometime after the November election. This delay would provide a period during which the validity of the new plan could be litigated. In the message accompanying the veto, the Governor further observed that when the General Assembly should convene on July 29, 1982, it might enact additional legislation "to compress the applicable filing dates" so that the nomination and election

---

2. Mr. Kenny, who represented senators in the Washington County area, suggested that the 1974 statute would disadvantage residents of Washington County who would be entitled to receive additional representation under the new apportionment plan. He further suggested that the proposed order should be presented to the Superior Court.

of senatorial candidates would be "consistent with the dates established by law."

These additional facts were expressed and set forth in our order of July 28, 1982, and were considered in the determination to lift the injunction.

Thereafter, on July 31, 1982, attorney Max Wistow, representing Jonathan K. Farnum and James W. Hayes, Jr., individually and on behalf of all registered voters, filed a complaint in the Federal District Court for the District of Rhode Island alleging violations of the State and Federal Constitutions and violations of 42 U.S.C.A. § 1983. The complaint requested that the Secretary of State and the members of the Board of Elections be enjoined from proceeding with the state senatorial elections under the 1974 district lines or under any other plan that failed to meet federal and state constitutional standards. This complaint challenged the validity of the 1974 district lines and also challenged the second reapportionment plan enacted by the General Assembly to become effective after the November 1982 elections. In response thereto, a three-judge court was convened, and in accordance with the complaint, the election officials of Rhode Island were preliminarily enjoined from proceeding with the 1982 state senate elections. Consequently, no senatorial election took place. One of the bases for the federal court's granting of a preliminary injunction was that there was insufficient time for election officials to prepare for an election of state senators under the 1974 districts, that "the election machinery is not in gear; it is stalled." The three-judge federal court, therefore, apparently concluded that this proposed election was not subject to the general principle that a federal court should not interfere with the conduct of rapidly upcoming elections, even where the existing apportionment arrangement clearly violates the "one man/one vote" principle. *E.g., Roman v. Sincock,* 377 U.S. 695, 709–12, 84 S.Ct. 1449, 1457–59, 12 L.Ed.2d 620, 629–31 (1964); *Reynolds v. Sims,* 377 U.S. at 585– 86, 84 S.Ct. at 1393–94, 12 L.Ed.2d at 541–

42. Naturally, had such a factual issue been raised before this court, we would have remanded the matter to the Superior Court for an immediate evidentiary hearing in order to determine whether the election could take place as we were assured would be possible. No such issue was presented, nor was the constitutionality of the 1974 lines challenged.

The action before this court was a class action, as is the action now pending before the three-judge federal tribunal. It is therefore interesting to note the possible preclusive effects of the doctrine of res adjudicata upon the bringing of an identical action in the federal court by an adequately represented member of the class concerning any matter that might have been litigated as well as that which was actually litigated in the state courts. *See* 7A Wright & Miller, *Federal Practice and Procedure: Civil* § 1789 (1972). Res adjudicata has been recognized in this circuit as applicable to civil rights litigation. *Mastracchio v. Ricci,* 498 F.2d 1257 (1st Cir.1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975); *Lovely v. Laliberte,* 498 F.2d 1261 (1st Cir.), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974). In those cases the Court of Appeals for the First Circuit applied the doctrine of *Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1876), which precludes relitigation of every ground that might have been presented as well as those that were actually presented. It is somewhat difficult for us to understand the nonapplication of such principles to the case at bar. *See Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 441, 66 L.Ed.2d 308 (1980).

It has been expressly stated by the Supreme Court of the United States in *Scott v. Germano,* 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965), that under circumstances in which a state judiciary is in the process of requiring valid reapportionment, a federal district court should abstain from interfering with the state judicial process. In that case the Supreme Court of Illinois had held the composition of the Illinois Sen-

ate to be invalid and retained jurisdiction over an action brought in the state court "for the purpose of taking such affirmative action as may be necessary to insure that the 1966 election is pursuant to a constitutionally valid plan." *Id.* at 408, 85 S.Ct. at 1526, 14 L.Ed.2d at 478 (quoting *People ex. rel. Engle v. Kerner,* 32 Ill.2d 212, 225, 205 N.E.2d 33, 41 (1965)). Prior thereto, a federal district court in Illinois had entered a judgment declaring a portion of the Illinois Constitution invalid and ordering that action be taken to implement a constitutional reapportionment. It further threatened to order that all Illinois state senators should be elected at large in 1966 and every four years thereafter. After the decision of the Supreme Court of Illinois, the district court refused to vacate the order of January 22, 1965. On direct appeal, the order of the district court was vacated and the case remanded with directions that the district court stay its hand until a reasonable opportunity be given to the appropriate agencies of the State of Illinois, including its supreme court, to redistrict the Illinois State Senate. In this per curiam opinion, the Court observed:

> "We believe that the District Court should have stayed its hand. The power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but appropriate action by the States in such cases has been specifically encouraged." *Scott v. Germano,* 381 U.S. at 409, 85 S.Ct. at 1527, 14 L.Ed.2d at 478.

In spite of the sentiments expressed by the Supreme Court of the United States in the foregoing case, the three-judge district court has chosen to assume jurisdiction in the case over the identical issues presented to the Rhode Island courts and has scheduled a hearing, to take place January 10, 1983, on the merits of the new redistricting plan. In the light of this determination, we are now confronted with the unavoidable question of our further procedure in respect to the case pending before us. The judgment of the Superior Court which we af-

firmed related to a redistricting plan that is no longer extant in any respect. This plan has been superseded by redistricting plan number two which is now before a three-judge district court for review.

Those issues in respect to which principles of res adjudicata might have been applied, such as the constitutionality of the 1974 district lines, the physical feasibility of the holding of a senatorial election in 1982, and the validity of the 1974 district lines under state law have all been superseded and seemingly rendered moot by subsequent acts of the General Assembly and by the progression of events.

We are at a loss to comprehend the failure of the district court to apply well-recognized abstention doctrines in the case at bar. Not only is *Scott v. Germano, supra,* directly on point but a series of opinions by the Supreme Court of the United States has instructed federal tribunals either to stay or to dismiss federal actions in situations in which similar or identical actions are pending in or may be brought in state courts. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Moreover, under the doctrine first enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court emphasized the notion of comity in the following terms.

> "[T]he notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as 'Our Federalism,' * * *. [This] concept does not mean blind deference to 'States' Rights' any more than it

means centralization of control over every important issue by our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44, 91 S.Ct. at 750–51, 27 L.Ed.2d at 675–76.

█ The foregoing concept of federalism has been applied to civil cases in varying contexts. *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (action challenging Illinois attachment procedures as applied to welfare payments); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (litigation concerning the validity of a New York judgment statute as enforced by the attachment process); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (litigation involving an Ohio public-nuisance statute applied to the exhibition of obscene films); *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975) (action challenging removal of justices of peace and constables after redistricting of precincts); *see* 17 Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction §§ 4241–55 (1978). Nevertheless, it is apparent that the abstention doctrine is not one of absence of jurisdiction but instead involves the exercise of discretion to avoid interference with important state interests, to avoid duplicative litigation, and to further the concept of federalism. *Id; see Miller v. Carr,* 535 F.Supp. 682, 685–88 (W.D.Wash.1982). The three-judge federal court has the power and jurisdiction to decide all of the federal issues involved in this controversy if it chooses to do so; and under the doctrine of pendent jurisdiction it has power to decide claims based upon state law as long as the state and federal claims derive from a common

nucleus of operative fact. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 228 (1966). If there is jurisdiction because of a substantial federal claim, there is power to hear pendent claims if they are such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding. *Id.; see* 13 Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction § 3567 (1975). Although decisions of the federal court on state constitutional and statutory issues will not be binding precedents in respect to this court's future determination, principles of res adjudicata would probably preclude relitigation of these issues in the state courts between the same parties.

█ In order to determine the status and future course of this litigation, a special hearing was set before this court on November 12, 1982, for the purpose of seeking advice of counsel concerning the mootness of issues pending before this court. At that hearing all counsel who were interested as representatives of parties or as friends of the court attended and participated. Counsel for the named parties were all of the opinion that the assumption of jurisdiction by the three-judge federal court and the effect of occurrences since our last proceeding had rendered this case and the issues raised therein moot. The only objection to this advice was rendered by Mr. Wistow. He suggested to the court that a plenary opinion concerning our affirmance of the Superior Court's judgment would be of aid to the federal court in deciding the state-law issues presently pending before it. We find Mr. Wistow's suggestion unpersuasive in light of the factual differences between the proposed reapportionment plan pending before the federal court and the plan upon which the Superior Court judgment was based.

In any event, it is our opinion that by virtue of assumption of jurisdiction by the three-judge federal court over the only issues that are still viable in connection with

the Rhode Island Senate-redistricting controversy, it would be unseemly for this court to continue the fragmentation already begun. Consequently, we consider the issues raised in the present case now to be moot, and there is no longer any live controversy pending before this court in respect to the redistricting of the senate. Therefore, we shall abstain from filing any further opinions in this case based upon our prior orders in affirming the judgment of the Superior Court or in responding to the inquiry of the Governor. We feel that such opinions would serve no useful purpose since the circumstances upon which they were based no longer exist and are very unlikely of such repetition as would cause such opinions to be of any significant precedential value. Therefore, we shall leave the field to the federal three-judge court and express the hope that it will decide the controversy before it in such fashion as will be consistent with the rights of the parties and with the public interest of the people of the State of Rhode Island.

When this case was tried in the Superior Court, portions of two actions (C.A. No. 82–1494 and C.A. No. 82–1727) were consolidated for purposes of trial. Essentially, claims of the plaintiffs for injunctive relief concerning senate redistricting were tried together. Claims relating to redistricting of the house of representatives were severed. The house redistricting issue was later tried before another justice of the Superior Court. Judgment was entered in that case on November 3, 1982. An appeal from that judgment is presently pending. Nothing contained in this opinion shall be deemed or construed to affect the future course of the case involving the redistricting of the house of representatives. Further, nothing in this opinion should be construed to affect issues in either case which were not tried before the Superior Court and considered by this court on appeal.

For the reasons stated, we hereby remand this case to the Superior Court with instructions to dismiss all claims for injunctive relief in respect to senate reapportionment set forth in consolidated actions C.A. No. 82–1494 and C.A. No. 82–1727 as moot.

BEVILACQUA, C.J., did not participate.