Tarek H. ElGABRI, M. D.

v.

Mary D. LEKAS, M.D., et al.

No. 93–719–Appeal.

Supreme Court of Rhode Island.

Aug. 22, 1996.

David Cicilline, Providence, Randy Olen, Warwick, for Plaintiff.

Shannon Gilheeney, Bruce J. Balon, Thomas R. Bender, William H. Jestings, David W. Carroll, Dennis J. McCarten, Providence, for Defendants.

**OPINION**

BOURCIER, Justice.

This case comes before us on appeal by Tarek H. ElGabri, M.D. (Dr. ElGabri), from orders of summary judgment entered against him by a trial justice of the Superior Court. In Dr. ElGabri's Superior Court civil action, the trial justice granted summary judgment motions in favor of the defendants Mary D. Lekas, M.D. (Dr. Lekas), Steven A. Issenberg, M.D. (Dr. Issenberg), and Hani Zaki, M.D. (Dr. Zaki), for the reason that the defendants had previously received a favorable jury verdict in a civil action filed against

them by Dr. ElGabri in the United States District Court for the District of Rhode Island. On appeal, that jury verdict was affirmed by the First Circuit Court of Appeals. *Elgabri v. Lekas*, 964 F.2d 1255 (1st Cir.), *reh'g and reh'g en banc denied* (1992). The summary judgment disposition of Dr. ElGabri's Superior Court action was based upon the doctrine of res judicata. For the reasons that follow, we believe that the trial justice correctly invoked and applied the doctrine, and we deny Dr. ElGabri's appeal.

### Case Travel and Facts

Dr. ElGabri is an otolaryngologist, practicing in Rhode Island in the medical specialty commonly referred to as "ear, nose, and throat" (ENT) medicine. In 1972 Dr. ElGabri received his undergraduate degree from the State University of New York at Buffalo. In 1977 he received his medical degree from Cairo University Faculty of Medicine in Egypt. Doctor ElGabri served as a rotating intern at Cairo University in 1978 and 1979. He returned to the United States in 1979, completing his general internship at Tulane University in 1980, and his general residency at McLaren Medical Center in Michigan in 1981. In 1982 he commenced a first year residency in otolaryngology at the University of Minnesota. He thereafter transferred to the Otolaryngology Residency Program at Rhode Island Hospital in Providence and completed that program in June 1984. After completing his residency, Dr. ElGabri studied in England from October through December 1984, after which he returned to Rhode Island with the intention of commencing private practice in otolaryngology in the Providence area.

Upon returning to the Providence area, Dr. ElGabri began his private practice specializing in otolaryngology. At that time he also began submitting applications for staff privileges at various hospitals throughout the state. Hospital staff privileges allow a doctor to admit and treat patients at a given hospital. Doctor ElGabri did receive staff privileges at Notre Dame Hospital, Cranston General Hospital, Kent County Memorial Hospital, and Memorial Hospital, but was unable to obtain staff privileges at Roger Williams Hospital, Miriam Hospital, Rhode Island Hospital, and St. Joseph Hospital, despite repeated applications to those hospitals over the course of several years.

In August 1986, Dr. ElGabri commenced a civil action in the Providence County Superior Court against one of the present defendants, Dr. Lekas, alleging, inter alia, libel, slander, emotional distress, and tortious interference with prospective business relations. Those allegations concerned Dr. ElGabri's attempts to obtain staff privileges at Roger Williams, Rhode Island, Miriam, Kent County Memorial, St. Joseph, Woonsocket, and Blackstone Valley Hospitals. It was Dr. ElGabri's contention that Dr. Lekas had impeded his being granted staff privileges by falsely and maliciously defaming his character through her contacts with representatives of the various hospitals. Doctor ElGabri also charged Dr. Lekas with having intentionally interfered with his prospective business relations in Rhode Island's ENT medical specialty field.

In December 1988, Dr. ElGabri amended his then pending Superior Court civil action complaint. He did so in order to add as party defendants, Drs. Issenberg and Zaki and to add additional counts and new causes of action for which Dr. ElGabri sought relief.[1] The new counts and causes of action included, inter alia, additional charges of slander, libel, and tortious interference with prospective business relations, and also violations of the Rhode Island Antitrust Act, G.L. 1956 § 6–36–4. In the antitrust counts Dr. ElGabri alleged that the newly-named defendant doctors, along with Dr. Lekas, had conspired together to exclude him from the ENT specialty field, as well as to monopolize that specialty field exclusively for themselves. Doctor ElGabri's complaint, in essence, alleged a civil conspiracy by the de-

---

1. Two other defendants, Vartan Papazian, M.D. and Thomas D. Della Torre, M.D., were also added to the amended complaint. However, these two physicians had not been named defendants in the federal lawsuit, and thus did not subsequently file motions for summary judgment based upon the doctrine of res judicata in the state Superior Court action. It was the grant of their codefendants' summary judgment motions that led to this appeal.

fendants to defame his character and thus effectively to exclude him from their field of specialization. That alleged defamation is reflected in the various libel and slander counts contained in Dr. ElGabri's amended complaint.

Doctor ElGabri's zeal for litigation, however, was hardly satisfied by his lingering Superior Court action, and so while that action was still pending, he opted for a new judicial offensive on a different battle front. He accordingly filed an action in United States District Court for the District of Rhode Island. In that federal action complaint, he named Drs. Lekas, Issenberg, and Zaki as defendants, as well as three other Rhode Island physicians who are not parties in this appeal. His federal court complaint included causes of action for alleged violations of sections 1 and 2 of the Sherman Antitrust Act, tortious interference with Dr. ElGabri's prospective business relationships, and, as in his pending state action, violations of the Rhode Island Antitrust Act. Doctor ElGabri also asserted in his federal court action complaint that the federal court had *"pendent jurisdiction over the claims arising under the Rhode Island code, [G.L.1956] Sections 6–36–1 et seq., and the Rhode Island common law."* (Emphasis added.)

The federal action also included allegations, as did the state action, that the defendant doctors had conspired to exclude him from Rhode Island's ENT field of medical specialty practice, as well as to monopolize for themselves the ENT medical and surgical services market, and that the defendants had encouraged others not to deal with him, and had tortiously interfered with his prospective business relationships by preventing him from obtaining staff privileges at Roger Williams, Miriam, Rhode Island, and St. Joseph Hospitals.

In the federal action, the defendants Drs. Lekas, Issenberg, and Zaki, in their answers to Dr. ElGabri's complaint, each posited the affirmative defense that the federal action

should be dismissed because there was a "prior action pending" in the Rhode Island Superior Court that involved the same parties and issues.[2] Doctor Issenberg's answer specifically denied federal court pendent jurisdiction over the Rhode Island-based causes of action, "since the plaintiff has filed a State Court action regarding the same facts as set forth below, said action is pending in the Providence Superior Court." In April 1991 when Doctor ElGabri's federal action was reached for trial his State Superior Court civil action was then still pending.

On May 29, 1991, after a nineteen day trial, a federal court jury rejected all of Dr. ElGabri's claims and returned verdicts in favor of all of the defendant doctors. Doctor ElGabri's appeal from the judgment entered on the verdicts was rejected by the First Circuit Court of Appeals on June 3, 1992, and after rehearing in that court, denied en banc on July 6, 1992.[3]

In the meantime all was quiet on the Superior Court front, but that judicial tranquillity would soon end. Upon learning that the Circuit Court of Appeals had rejected his appeal, Dr. ElGabri, as someone wrote in an old song, picked himself up, dusted himself off, and started all over again, this time in the Providence County Superior Court. Upon his return to the state battlefield in January 1993, however, he was met this time by a salvo of motions for summary judgment fired by defendants Drs. Lekas, Issenberg, and Zaki. Those motions claimed that the federal court jury verdicts and the final judgment thereon foreclosed Dr. ElGabri's civil action in the Superior Court under the doctrine of res judicata. In their motions the defendants contended that the plaintiff's state action claims all targeted the same basic underlying occurrences and causes of action that had served as the bases for Dr. ElGabri's ill-fated federal civil action. The defendants asserted that because a jury had rendered a verdict resolving those claims in the federal court action, Dr. ElGabri was now barred from relitigating those claims as

---

2. The District Court's docket sheets were made a part of the appellate record by the defendants, and they reveal that defendant/doctors Lekas, Issenberg, and Zaki each filed a motion to dismiss Dr. ElGabri's complaint.

3. *Elgabri v. Lekas,* 964 F.2d 1255 (1st Cir.) *reh'g and reh'g en banc denied* (1992).

well as any claims or causes of action that could have been litigated in the federal case.

A Superior Court trial justice, granted the defendants' motions for summary judgment on October 1993, ruling that Dr. ElGabri's state action claims were in fact barred under the dictates of the res judicata doctrine. The trial justice found that the res judicata bar extended also to Dr. ElGabri's state action claims for libel, slander, and infliction of emotional distress, even though those specific claims had not been asserted in the federal court action. The trial justice, in granting summary judgment, reasoned that Dr. ElGabri's three state claims all derived from a "single core of operative facts." Upon entry of final judgment for the defendants, Dr. ElGabri duly filed his appeal to this Court.

### Summary Judgment

 This Court, when reviewing the grant or the denial of a motion for summary judgment, employs the same analysis as did the trial justice when ruling upon the motion. *See Boland v. Town of Tiverton,* 670 A.2d 1245 (R.I.1996); *Chester v. aRusso,* 667 A.2d 519 (R.I.1995). The trial justice should grant a moving party's motion only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law." *Chester,* 667 A.2d at 521 (quoting Rule 56(c) of the Superior Court Rules of Civil Procedure). In the course of performing his or her analysis of the case facts, the trial justice is of course only to look for disputed material facts, and, if found, is not permitted to resolve those disputed facts. The resolution of disputed material facts is reserved solely for the factfinders after trial. *See Pound Hill Corp., Inc. v. Perl,* 668 A.2d 1260 (R.I.1996). Because the grant of summary judgment is a drastic remedy, it should, of course, only be cautiously granted. *Boland,* 670 A.2d at 1248. The question of issue preclusion, however, emanating from an assertion of res judicata generally presents to the trial justice an issue of law. *Mulholland Construction Co. v. Lee Pare & Associates,* 576 A.2d 1236, 1237 (R.I.1990.)

### The Doctrine of Res Judicata

██ Res judicata, a Latin term meaning "[a] matter adjudged," Black's Law Dictionary 1305 (6th ed. 1990), has long been a part of this state's jurisprudence. *See, e.g., Randall v. Carpenter,* 25 R.I. 641, 57 A. 865 (1904). When invoked, it makes a prior judgment in a civil action between the same parties conclusive with regard to any issues that were litigated in the prior action, or, that could have been presented and litigated therein. *Rhode Island Student Loan Authority v. NELS, Inc.,* 600 A.2d 717, 720 (R.I.1991); *Coates v. Coleman,* 72 R.I. 304, 312–13, 51 A.2d 81, 85 (1947); *Matteodo v. Pesce,* 68 R.I. 188, 27 A.2d 109 (1942). We have further noted in reference to the doctrine that "[a] party defeated in one action cannot maintain a second action based on a ground which could properly have been, but was not, set forth and relied upon in the former action." *Wholey v. Columbian National Life Insurance Co.,* 69 R.I. 254, 262, 32 A.2d 791, 795 (1943).

 As we have more recently opined, the doctrine "serves as an 'absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action.'" *Gaudreau v. Blasbalg,* 618 A.2d 1272, 1275 (R.I.1993) (quoting *In re Sherman,* 565 A.2d 870, 872 (R.I.1989) and *Beirne v. Barone,* 529 A.2d 154, 157 (R.I.1987)). The policy underlying res judicata is to economize the court system's time and lessen its financial burden. "This doctrine ensures that judicial resources are not wasted on multiple and possibly inconsistent resolutions of the same lawsuit." *Gaudreau,* 618 A.2d at 1275. As noted by the late Justice Reed in *Stoll v. Gottlieb,* 305 U.S. 165, 172, 59 S.Ct. 134, 138, 83 L.Ed. 104, 109 (1938), "[i]t is just as important that there should be a place to end as there should be a place to begin litigation."

With these basic concepts of the doctrine of res judicata so stated, we now turn to the manner in which this doctrine is properly applied. Recently, in the case of *E.W. Audet & Sons, Inc. v. Firemen's Fund Insurance Co.,* 635 A.2d 1181, 1186 (R.I.1994), we remarked that a "comprehensive treatment" of

the general principles of res judicata could be found in 1 Restatement (Second) *Judgments* §§ 1–29, 34–42 at 1–101, 343–416 (1982). The Restatement recommends that the doctrine of res judicata be applied to those matters actually litigated between parties, as well as those that are derived from a "series of connected transactions." *See* 1 Restatement (Second) *Judgments* § 24. The Restatement approach has been said to represent the "present trend" regarding the application of res judicata. *Manego v. Orleans Board of Trade*, 773 F.2d 1, 5 (1st Cir.1985).[4]

In *Manego*, the First Circuit Court of Appeals decided to "officially embrace" the Restatement's "transactional" definition as an inherent part of the law of res judicata. *Manego*, 773 F.2d at 5. Specifically referring to § 24, the First Circuit quoted the Restatement as follows:

"(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . ., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

"(2) What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. Restatement (Second) of Judgments § 24 (1982)." 773 F.2d at 5.

The First Circuit in *Manego*, noted, as it had previously, that so far as it was aware, Rhode Island law, as regards the principles of res judicata, did not differ from the Restatement's approach. *Manego*, 773 F.2d at

5 (citing *Capraro v. Tilcon Gammino, Inc.*, 751 F.2d 56 (1st Cir.1985)). The Circuit Court was correct in observing that this Court had not yet specifically addressed the question of whether this state's res judicata interpretation existed harmoniously with that of the Restatement (Second) *Judgments*. We answer that query today. We hold that the preclusive effect of the res judicata doctrine should be applied to "all or any part of the transaction, or series of connected transactions, out of which the action arose." *See* 1 Restatement (Second) *Judgments* § 24.

This adoption of the Restatement's res judicata "transactional" rule, we believe, formally and affirmatively approves the implicit deference we gave to the Restatement's treatment of the principles of res judicata in our opinion in *Audet*. Our holding also supports this Court's long-standing policy considerations of promoting judicial economy, as well as providing the contentious parties the benefit of finality and a conservation of their own monetary and temporal resources. "The law of res judicata now reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." 1 Restatement (Second) *Judgments* § 24, comment a. This application of the Restatement approach has been said to extinguish a plaintiff's claim against a defendant even though the plaintiff would be prepared in a second action to present evidence or grounds or theories of the case not presented by the plaintiff in the first action, or to seek remedies or forms of relief not demanded in that action. *See* Charles Alan Wright, *Law of Federal Courts*, 724 (5th ed. West.1994). The Restatement notes, and we agree, that the transactional view of res judicata that we adopt today reflects the "modern liberal provisions as to counterclaims and joinder of claims and parties as well as the liberal attitude taken by federal courts toward 'ancillary' and 'pendent' jurisdictions." 1 Restatement (Second) *Judgments* § 24, comment a.[5]

---

4. For a collection of cases from jurisdictions that have either explicitly or implicitly adopted the Restatement (Second) of Judgments approach to the doctrine of res judicata one is directed to, John F. Wagner, Jr., Annotation, *Proper Test to Determine Identity of Claims For Purposes of*

*Claim Preclusion By Res Judicata Under Federal Law*, 82 A.L.R. Fed. 829 (1987).

5. For legal edification purposes, it is necessary to state that the Restatement further notes, and we further agree, "that if more than one party has a

■ There remains yet for our consideration in order to complete our acceptance of the Restatement's position regarding its res judicata "transactional" approach, the Restatement's § 26 exceptions to the general rule concerning the prohibition of relitigating, or "splitting," matters once the claims have been adjudicated on the merits. One of those exceptions, pertinent here because it has been raised by Dr. ElGabri in this appeal, is the exception circumstance wherein "[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein." 1 Restatement (Second) *Judgments* § 26(1)(a). The Restatement takes the position that the "main purpose of the general rule stated in § 24 is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable where the defendant consents, in express words or otherwise, to the splitting of the claim." 1 Restatement (Second) *Judgments* § 26, comment a.

The comment to the Restatement further provides:

"Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, *and in neither action does the defendant make the objection that another action is pending based on the same claim,* judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim." (Emphasis added.) *Id.*

In this case we note from the record that the defendant doctors did here in substance follow the Restatement's suggestion concerning what had to be done in order to defeat any later assertion by Dr. ElGabri, that he should be allowed to split his claim because the defendants had acquiesced in his so do-

ing. That contention, advanced here by Dr. ElGabri is without merit, however, because we note that the defendants did in their answers to his federal complaint each request dismissal of Dr. ElGabri's Federal District Court lawsuit by pleading as an affirmative defense thereto his then pending action in the State Superior Court that involved both the same parties and issues. We believe that this pleading by the defendants was sufficient to rebut Dr. ElGabri's appellate allegation that they had acquiesced in the splitting of his state court claim.

Having decided that the defendants did not so acquiesce, we now turn to Dr. ElGabri's contention that the Superior Court trial justice erred in granting their motions for summary judgment on his state civil action claims alleging libel, slander, and infliction of emotional distress.[6]

The foundations upon which Dr. ElGabri's state and federal lawsuits were constructed necessarily rely upon the same bricks and mortar. When we examine his allegations that the defendant doctors had conspired against him, or his allegations that they had libeled and slandered him, with his allegations that the defendant doctors inflicted emotional distress upon him, all intended by them to keep him from becoming an established ENT specialist, we believe those causes of action to be interconnected. In their very essence, they constituted the same "transactions" or "series of connected transactions" as referred to in the language of the Restatement. In revisiting the pertinent language of § 24 of the Restatement, we find it clear that the determination of the existence of a transaction or series of connected transactions is to be reached after a pragmatic analysis of the pertinent facts, giving weight to whether the "facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the

right to relief arising out of a single transaction, each such party has a separate claim for purposes of merger and bar." 1 Restatement (Second) *Judgments* § 24, comment a (1982).

6. We have previously held that a Superior Court trial justice's granting of a summary judgment motion was the proper manner in which to effec-

tuate the doctrine of res judicata in a case in which a final judgment in the federal court was determined to bar a subsequent state court action. *See Air–Lite Products, Inc. v. Gilbane Building Co.,* 115 R.I. 410, 425, 347 A.2d 623, 631 (1975).

parties' expectations or business understanding or usage." 1 Restatement (Second) *Judgments* § 24.

Doctor ElGabri contended in his December 1988 amended Superior Court complaint that the defendant doctors had violated the state's antitrust laws by conspiring to prevent his receiving staff privileges at several major hospitals in Rhode Island by defaming his character. In his November 1989 federal lawsuit, he alleged violations of the Sherman Act (the federal antitrust statute), as well as pleading that the defendants had also violated this state's antitrust laws. The defendants in the federal complaint were also charged with conspiring to keep him out of the Rhode Island ENT field of medical specialization, by defaming his personal and professional character in order to ensure that he would not be given staff privileges at those same major hospitals.

■ The two actions, state and federal, can certainly be described as being strikingly similar. Yet, Dr. ElGabri argues that his state claim should not have fallen victim to the defendants' summary judgment motions in its entirety because it included causes of action that were not specifically included in the federal court action. The state court action, he contends, should have been allowed to survive, at least with regard to the defamation and emotional distress claims.[7] Basically, what Dr. ElGabri contends is that even though the engines that drove both the state and the federal lawsuits were fueled by the defendant doctors' defamatory remarks and writings effectively and wrongfully precluding his opportunity to obtain hospital staff privileges, he should be able to seek redress in a piecemeal fashion in various judicial forums without regard to any prior judicial

determinations made on the merits of his claims.

He certainly could have included his defamation and emotional distress claims in his federal court action. He could have done so by simply utilizing the device of supplemental jurisdiction, permitted by 28 U.S.C. § 1367(a).[8] As we have noted, Dr. ElGabri in his federal complaint did assert that the Federal District Court had pendent jurisdiction over some of his other state causes of action.

■ Since the United States Supreme Court opinion in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 227 (1966), it has been commonly recognized that the "impulse" of the Federal Rules of Civil Procedure is "toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." The Supreme Court stated that in order for pendent jurisdiction to be properly exercised, "[t]he state and federal claims must derive from a common nucleus of operative fact." *Id.* at 725, 86 S.Ct. at 1138, 16 L.Ed.2d at 228; *see also Licht v. Quattrocchi*, 454 A.2d 1210, 1215 (R.I.1982). Additionally, if federal jurisdiction is based upon a substantial federal claim, the federal court has the power to hear pendent claims if they are such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of America*, 383 U.S. at 725, 86 S.Ct. at 1138, 16 L.Ed.2d at 228; *Licht*, 454 A.2d at 1215.

The *Gibbs* definition of a claim for pendent jurisdiction purposes has been said to closely resemble the Restatement's definition of a claim for res judicata purposes. *See* Mark Jay Altschuler, Note, *The Res Judicata Im-*

---

7. The plaintiff concedes in his brief that "[i]f this Court finds no waiver of res judicata, the judgment for the Appellees in federal court bars Dr. El[G]abri from proceeding with his state claims based on state anti-trust violations. The federal and state anti-trust statutes are strikingly similar." Having reached the opinion that the defendants did not waive their right to assert the doctrine of res judicata, we agree with the plaintiff that his state anti-trust law claims must indeed fail.

8. The pertinent language of 28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Supplemental jurisdiction is also referred to as "pendent jurisdiction."

plications of Pendent Jurisdiction, 66 Cornell L.Rev. 608, 614 (1981). The author comments that

"[u]nless the plaintiff can persuade the state court that the federal court would have declined pendent jurisdiction because of the importance of the state claim or because of possible jury confusion, the state court must bar him from bringing a second action. Although courts will not always exercise their discretion to hear a pendent claim, the *Restatement Second* forces the plaintiff to assert his state claim in federal court, or risk forfeiting his right to pursue it in any other forum.

"Several policies strongly support precluding the plaintiff in this context. First, fairness dictates that the plaintiff should not have two opportunities to pursue one claim. Second, the federal rules liberally allow amendment of pleadings and joinder of claims, giving the plaintiff every chance to assert his related state claim in the federal action. Furthermore, because the plaintiff chose the federal forum, it is fair to require him to litigate his entire claim there. Finally, barring the second action conserves judicial resources that might otherwise be spent in duplicating the federal court's efforts." *Id.* at 618–20.

Our *Licht* case concerned an appeal from a judgment entered in the Superior Court declaring that an act passed by the General Assembly purporting to reapportion and redistrict the Rhode Island Senate was unconstitutional. *Licht,* 454 A.2d at 1210. The complaint filed by the plaintiffs in the *Licht* case was a class action, brought on behalf of certain named plaintiffs, individually, as well as on behalf of all persons registered to vote in the State of Rhode Island. *Id.* at 1211. The complaint raised claims and alleged violations of both State and Federal Constitution provisions as well as violations of the federal civil rights statute. *Id.* The Superior Court judgment in that case had enjoined the Secretary of State and the Board of Elections from accepting declarations of candidacy or preparing for the election of the members of the Rhode Island Senate until such time as the Rhode Island General Assembly should enact a constitutional senate-redistricting plan. *Licht,* 454 A.2d at 1210.

We noted in *Licht* that the Superior Court's injunction "clearly contemplated the retention of jurisdiction in order that the trial court might implement compliance with its orders." *Id.*

However, a second class-action complaint was also filed on behalf of certain other named plaintiffs, as well as on behalf of all registered state voters, in the United States District Court for the District of Rhode Island. *Licht,* 454 A.2d at 1213. That second complaint also alleged violations of the State and Federal Constitutions as well as the federal civil rights statute. A three-judge court ordered that election officials in Rhode Island be preliminarily enjoined from proceeding with the 1982 State Senate elections. *Id.*

Although the crux of our discussion in *Licht* evidenced our surprise that the federal court did not invoke the doctrine of abstention, and instead chose to entertain jurisdiction, we did note in dicta that res judicata principles were apparently applicable to the case. We summarized our position as follows:

"The action before this court was a class action, as is the action now pending before the three-judge federal tribunal. It is therefore interesting to note *the possible preclusive effects of the doctrine of res ajudicata* upon the bringing of an identical action in the federal court by an adequately represented member of the class *concerning any matter that might have been litigated as well as that which was actually litigated in the state courts. See* 7A Wright & Miller, *Federal Practice and Procedure:* Civil § 1789 (1972)." (Emphasis added.) *Licht,* 454 A.2d at 1213.

We note at this juncture that this Court has recognized the "possible preclusive effects" upon one's right to litigate by the application of res judicata principles upon the filing of a subsequent federal action alleging claims that could have been litigated in a then pending action in our state courts. The very same situation exists here in this case, except, of course, for the distinguishing fact that Dr. ElGabri's federal court complaint was *first litigated and adjudicated,* and

thereafter, his state action was reactivated and pursued.

We also noted in *Licht* that "[a]lthough decisions of the federal court on state constitutional and statutory issues will not be binding precedents in respect to this court's future determination, principles of res ajudicata would probably preclude relitigation of these issues in the state courts between the same parties." *Licht,* 454 A.2d at 1215. Our opinion today is therefore consistent with the manner in which we have previously discussed the possible preclusive effects of res judicata, particularly as it relates to actions based upon a common transaction brought in both federal and state forums.

In light of our having expressly adopted the Restatement's view of the doctrine of res judicata, and the well-settled rules of federal court jurisdiction, we are of the opinion that Dr. ElGabri should have undertaken to join all of his related transactional claims in one judicial proceeding. He did not, and once his federal action was fully litigated in the United States District Court, he was thereafter foreclosed in his state action from going forward with any cause of action that could have been joined in his previously litigated federal action. The Superior Court trial justice, accordingly, did not err in granting the defendants' motions for summary judgment, and we affirm her grant of summary judgments and the dismissal of the plaintiff's action.

The plaintiff's appeal is denied and dismissed, and we remand the papers of this case to the Superior Court.

WEISBERGER, C.J., and FLANDERS, J., did not participate.