**Leonard C. WRIGHT**

v.

**Mary Anita ZIELINSKI.**

No. 2001–57–Appeal.

Supreme Court of Rhode Island.

June 11, 2003.

Michael Ahn, for Plaintiff.

William J. Balkun, Cranston, for Defendant.

Present: WILLIAMS, C.J.,
FLANDERS, and GOLDBERG, JJ.

**OPINION**

PER CURIAM.

After the entry of a final judgment of divorce, can one of the parties maintain a lawsuit alleging breach of their prenuptial agreement?  Not under the circumstances of this case, we hold, because the doctrine of res judicata bars such post-divorce litigation.

The plaintiff-husband, Leonard C. Wright, appeals from a Superior Court summary judgment in favor of defendant-wife, Mary Anita Zielinski, dismissing the husband's claims for (1) breach of contract, (2) abuse of process, and (3) intentional infliction of emotional distress.  This Court directed both parties to show cause why we should not resolve this appeal summari-

ly. Because they have not done so, we proceed to decide the appeal at this time.

This is a controversy over a prenuptial agreement that the parties entered into in 1980 to "determine the rights and claims that will accrue to each of them * * * by reason of their marriage [.]" They agreed "to accept the provisions of this Agreement in lieu of and in full discharge, settlement and satisfaction of, all such rights and claims [.]" The agreement provided, in part, that the parties waived their right to claim alimony or other divisions of property if they were divorced.

On November 16, 1995, however, the wife filed a complaint for divorce and a motion for temporary allowances in Family Court. In her complaint, she requested an equitable distribution of marital assets, a health-care allowance, assignment of the estate, and other forms of financial relief. In her motion for temporary allowances, which the Family Court granted, the wife requested that her husband be restrained from alienating or transferring his assets. She also asked for various financial allowances from him. None of the wife's filings, however, mentioned the prenuptial agreement. Eventually, however, she dropped these claims and agreed to a divorce from her husband pursuant to the terms in their prenuptial agreement. On February 28, 1997, the Family Court entered the final judgment of divorce, including a provision that incorporated the terms of the prenuptial agreement into the judgment.[1]

Less than a week later, however, on March 6, 1997, the husband filed a complaint against his former wife in the Superior Court. He alleged that by her actions in initially seeking to evade the validity of the prenuptial agreement, by requesting financial relief in the divorce complaint, and by seeking to enjoin him from alienating or transferring his assets in the motion for temporary allowances, the wife was liable to him for: (1) breach of contract, (2) abuse of process, and (3) intentional infliction of emotional distress. In response, the wife moved for summary judgment, arguing that the doctrine of res judicata barred the breach-of-contract claim. Furthermore, she contended, she was not guilty of abuse of process because she legitimately was seeking a divorce by obtaining appropriate financial relief under the applicable matrimonial laws. Finally, the wife contended, the husband could not prove the asserted tortious infliction of emotional distress because he did not allege physical ills or demonstrate that the wife's conduct caused him to suffer any physical or psychological ills.

The motion justice granted the wife's motion for summary judgment. She reasoned that the breach-of-contract claim was barred because it was a compulsory counterclaim that should have been brought in the divorce action. She also rejected the abuse-of-process claim because it appeared to her that the wife filed her compliant of divorce to terminate the

---

1. The final judgment of divorce included the following:

> "Plaintiff and Defendant waive alimony permanently in accordance with their Antenuptial Agreement and each party is denied alimony permanently. *Any other provisions in their Agreement are also entered in accordance with the terms of the Agreement.*
> "* * *
> "The Court made the following Finds of Fact:

> "* * *
> "(e) The Court finds Plaintiff and Defendant voluntarily and knowingly entered into an Antenuptial Agreement dated September 30, 1980 and which the Agreement was fair and reasonable at the time of it's [*sic*] execution and it is fair and reasonable now; that the Agreement is valid and enforceable and it governs the apportionment of assets and alimony between the parties." (Emphasis added.)

marriage and not for an improper ulterior motive. Furthermore, she ruled, the wife's alleged attempt to avoid the prenuptial contract via the divorce action was not an abuse of process because the inherent purpose of the divorce action was to settle the parties' various rights and liabilities as a divorcing married couple, including whatever rights and obligations they might have under any valid prenuptial agreement. Finally, the motion justice found that there was no issue of material fact concerning the emotional-distress claim because the husband had not introduced any expert medical evidence demonstrating a causal connection between the wife's alleged tortious misconduct and the husband's asserted physical symptomology.

On appeal, the husband argues that res judicata should not bar his breach-of-contract claim because the breaches of contract for which he sought relief occurred after the divorce action began. Furthermore, he reiterates that the wife was guilty of abuse of process in asserting financial claims in her divorce complaint and in her motion for temporary allowances because she allegedly knew that she was not entitled to obtain such relief under the prenuptial contract. In addition, he argues, the wife filed an ex-parte motion for temporary allowances to tie up his assets and to leverage her bargaining power in the divorce case. Finally, he alleges, the wife intentionally inflicted emotional distress on him in suing him for divorce when she knew that her conduct was causing problems between him and his son, who ultimately committed suicide.

■■■ Summary judgment is a drastic remedy that should be granted cautiously. *ElGabri v. Lekas,* 681 A.2d 271, 275 (R.I. 1996). This Court reviews a motion for summary judgment on a *de novo* basis and views the evidence in the light most favorable to the non-moving party. *DiBattista v. State,* 808 A.2d 1081, 1085 (R.I.2002). Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law." Super.R.Civ.P. 56(c).

■■■ The question of whether a previous final judgment results in any claim preclusion in a later case between the same parties generally presents an issue of law. *ElGabri,* 681 A.2d at 275. Res judicata applies to those claims already litigated between parties and to those that a party could have litigated at the time of a previous action. *DiBattista,* 808 A.2d at 1086 ("[A]ll claims arising from the same transaction or series of transactions which could have properly been raised in a previous litigation are barred from a later action."); *see also ElGabri,* 681 A.2d at 275–76. A party could have litigated a claim if it derives from " 'all or any part of the transaction, or series of connected transactions, out of which the action arose.' " *ElGabri,* 681 A.2d at 276. Res judicata will extinguish a plaintiff's claim against a defendant even though the plaintiff would be prepared to present evidence or theories of the case not presented in a previous action. *Id.*

■■■ Here, we conclude, the husband could have and should have brought his breach-of-contract claim as a compulsory counterclaim in the divorce suit because the alleged breaches already had occurred when the prenuptial agreement ultimately formed the basis for the terms of the divorce.[2] Once the wife asked for relief in

---

2. The Family Court would have possessed jur-

isdiction to hear the husband's breach-of-con-

her divorce action that was inconsistent with the prenuptial agreement, the husband should have counterclaimed that the wife breached the agreement in failing to abide by its provisions and by seeking a divorce on different terms than those in the agreement. Because the husband failed to assert breach of contract as a counterclaim in the divorce proceedings and allowed a final judgment of divorce to enter that included the terms of the prenuptial agreement, but that failed to mention any previous breaches thereof, the motion justice properly precluded him from recovering on that theory in the later lawsuit.

■ The husband also contends that res judicata does not apply to his breach-of-contract claim because the breaches for which he sought relief occurred after the wife began the divorce action. But this contention does not square with what the husband alleged in his later complaint. The husband alleged that the wife breached the prenuptial contract by requesting equitable distribution in her divorce complaint and by requesting the court to restrain him and enjoin him from alienating or transferring his assets.[3] Indeed, the

husband drew the precise phrasing in his complaint about the wife's previous requested restraint against the allocation of his assets from the wife's motion for temporary allowances that she filed on November 15, 1995, together with her divorce complaint. Thus, the allegations of breach contained in the husband's complaint clearly arose from the wife's initiation of the divorce action. Because the husband did not counterclaim for breach of contract in the divorce case and because his later complaint failed to allege any breaches of the prenuptial agreement that arose subsequent to the wife's commencement of the divorce litigation, the final judgment of divorce precluded him from including such claims in his later breach-of-contract suit. Under these circumstances, once the court entered the provisions of the prenuptial agreement into the final judgment of divorce, the prenuptial agreement was "no longer enforceable * * * under contract law principles" but was instead "superseded by the court's decree." 5 *Family Law and Practice* § 59.07[2] at 59–46.1 n. 2 (Arnold H. Rutkin ed.2001).

■ Besides rejecting the husband's breach-of-contract claim, the motion jus-

---

tract claim premised on his wife's alleged breach of their prenuptial agreement. *See* G.L.1956 § 8–10–3 ("There is hereby established a family court, consisting of a chief judge and eleven (11) associate justices, to hear and determine * * * antenuptial agreements, property settlement agreements and all other contracts between persons, who at the time of execution of the contracts, were husband and wife or planned to enter into that relationship[.]"); *see also Lubecki v. Ashcroft*, 557 A.2d 1208, 1211, 1213 (R.I.1989) (recognizing that the Legislature has expanded the equity jurisdiction of the Family Court with the intent to offer "parties who have filed a petition for divorce, separation, or other relief in the Family Court, a comprehensive resolution of property, contractual, and equitable disputes that have arisen between them" including the authority "to hear

and determine disputes arising out of antenuptial agreements").

3. The husband's complaint alleged, in pertinent part: "As part of [the wife's] Complaint for Divorce, she requested certain relief from the [c]ourt, including but not limited to an allowance for her own support, as well as assignment of the estate of [the husband] for her benefit; that she be awarded counsel fees, witness fees and costs from [the husband], Leonard C. Wright. Further, that Leonard C. Wright be restrained and enjoined from selling, transferring, alienating, encumbering, or further encumbering, secreting, hypothecating, or otherwise disposing of any assets in his possession or control." The husband alleged that the wife's conduct in making these allegations breached the prenuptial agreement.

tice properly ruled in favor of the wife on the husband's abuse-of-process claim. "To show an abuse of process, [the husband] must demonstrate that 'a legal proceeding, although set in motion in proper form, becomes perverted to accomplish an ulterior or a wrongful purpose for which it was not designed.'" *Toste Farm Corp. v. Hadbury, Inc.*, 798 A.2d 901, 907 (R.I. 2002) (quoting *Clyne v. Doyle*, 740 A.2d 781, 783 (R.I.1999)). For example, in *Heal v. Heal*, 762 A.2d 463, 465 (R.I.2000), we referred to a husband's request for custody of his children to whom he had shown little interest as an "abuse of process," citing the trial justice's comment that his suit was solely "to make good on his threat to make [his wife's] life 'a living hell.'"

Unlike the husband in *Heal*, however, no evidence suggested that the wife in this case initiated the divorce litigation for any reason other than for the valid purpose of divorcing her husband. Nor was there any indication that she thereafter "perverted" the divorce action for some improper, ulterior purpose other than to obtain the divorce itself. Although she may have initially sought to ignore, invalidate, or evade the terms of the prenuptial contract, no evidence indicated that she was endeavoring to achieve some improper ulterior objective through the divorce action. Rather, all the evidence showed was that she filed for a divorce to obtain a genuine resolution of her rights and liabilities as a divorced spouse, whether pursuant to the terms of the prenuptial agreement or otherwise. Thus, the motion justice correctly ruled that the husband failed to present sufficient evidence for a jury to decide whether defendant perverted an otherwise legal divorce proceeding for some improper, ulterior purpose.

We also hold that the motion justice correctly rejected the husband's claim for intentional infliction of emotional distress. To prove intentional infliction of emotional distress, the plaintiff must allege and prove that the defendant intentionally or recklessly engaged in extreme and outrageous conduct, resulting in the plaintiff's severe emotional distress. *Jalowy v. Friendly Home, Inc.*, 818 A.2d 698, 707 (R.I.2003); *Vallinoto v. DiSandro*, 688 A.2d 830, 838 (R.I.1997). To establish the causal connection between the wife's alleged misconduct and the husband's psychological and physical complaints, the husband was required to adduce expert medical evidence. *Vallinoto*, 688 A.2d at 838. Although the husband provided evidence of medications he took for depression and for high blood pressure in the relevant period, as well as the names of witnesses who might testify for him at a later trial, he provided no expert medical opinion to establish that the wife's conduct caused his symptoms. Therefore, there was no genuine issue of material fact precluding the dismissal of his emotional-distress claim. When opposing a motion for summary judgment, a party cannot merely cite the names of witnesses who will testify at a later trial and then hope the court will allow him to prove his or her claims at that time. *See Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I.1998). Rather, from an evidentiary standpoint, once a party files and serves a properly supported summary-judgment motion, an alarm bell begins to toll and it is time for the opposing parties either to put up their evidence or shut up their case. *See id.* at 970.

For these reasons, we deny the appeal and affirm the summary judgment for the wife.

Justice FLAHERTY did not participate.