Vincent DiBATTISTA et al.

v.

**STATE of Rhode Island, DEPARTMENT OF CHILDREN, YOUTH & FAMILIES et al.**

No. 97–339–Appeal.

Supreme Court of Rhode Island.

June 30, 1998.

Robin DiBattista, pro se.

Jametta O. Alston, Providence.

**ORDER**

This appeal questions whether foster-care parents who have unsuccessfully litigated an administrative appeal of an order revoking their state-approved foster-care license may later bring a separate damages and equitable action against the state and certain of its agents based upon the state's alleged wrongful revocation of their license.

The plaintiffs Vincent DiBattista and Robin DiBattista appeal *pro se* from a judgment of the Superior Court dismissing their complaint against the State of Rhode Island's Department of Children, Youth & Families (DCYF) and various state agents. The genesis of this complaint was plaintiffs' dissatisfaction with DCYF's revocation of

their license to serve as foster-care parents, including their disagreement with the process and procedure whereby their license was revoked. Their plaintiffs are also before this Court on a petition for a writ of habeas corpus seeking the "immediate return of the four minor children who were illegally removed from [plaintiffs'] custody." We ordered the parties to show cause before a panel of this Court concerning why their appeal and petition should not be decided summarily. After reviewing the parties' written submissions and after hearing oral argument, we conclude that no cause has been shown and that the appeal can be decided at this time.

The plaintiffs were foster-care parents licensed by DCYF to care for children in DCYF's custody. Because DCYF believed plaintiffs had engaged in inappropriate behavior for state-licensed foster-care parents (including alleged intimidation and threats directed at DCYF personnel and at plaintiffs' four foster children, as well as denying DCYF access to plaintiffs' home), DCYF informed plaintiffs by telephone and then by a letter dated January 10, 1995 that it was revoking their foster-care license effective immediately. According to the incomplete record provided to us on this appeal, plaintiffs pursued an administrative appeal of this license revocation[1] and were granted hearings on two separate days in April and May of 1995, where, according to the hearing officer, plaintiffs and DCYF "had [the] opportunity to present testimony, cross-examine the opposing party's witnesses and fully argue their respective positions." On June 5, 1995, the administrative hearing officer rendered a decision upholding DCYF's revocation of plaintiffs' foster-care license. He found that although plaintiffs "sincerely desired and intended to provide the utmost in love and care for those children entrusted to them on a temporary basis," there was "legitimate reason for concern regarding the emotional well-being of [their] foster children."

Pursuant to their right under this state's Administrative Procedures Act, G.L.1956

---

1. Other than the June 5, 1995 administrative decision, neither party has presented this Court with the pleadings, hearing transcripts, or actual orders or judgments entered as a result of decisions rendered during plaintiffs' administrative appeal.

chapter 35 of title 42 (the APA) and per G.L.1956 § 8–10–3(e),[2] plaintiffs appealed the matter to the Family Court for administrative judicial review. DCYF subsequently moved to dismiss plaintiffs' appeal. After a hearing but without the benefit of the actual record of the administrative hearings (which the Family Court had apparently ordered DCYF to prepare and provide), a Family Court justice granted DCYF's motion. The plaintiffs then filed a motion to vacate this decision, claiming that the Family Court justice lacked jurisdiction to render such a decision absent a record on appeal.[3] After plaintiffs filed a motion for contempt based upon DCYF's failure to supply a response to their motion to vacate, a hearing was scheduled for January 4, 1996 before the Family Court. However, plaintiffs' motion to vacate was ultimately heard by another justice of the Family Court after the original justice was unexpectedly called away on the hearing day. That same day the new hearing justice reviewed the administrative appeal record (which still lacked a transcript of the administrative hearing from which plaintiffs' were appealing) and rendered a decision denying plaintiffs' motion to reconsider the earlier dismissal of their case. Significantly, plaintiffs did not appeal or seek appellate review of any order or judgment embodying this dismissal ruling.

In June of 1996 plaintiffs filed a separate lawsuit in the Superior Court entitled "Complaint for Civil Rights Violations" against DCYF and various individual state agents, including the two Family Court justices that rendered decisions adverse to their position. The thirty-page complaint alleged a host of civil rights violations as well as conduct in contravention of a litany of civil and criminal provisions of the Rhode Island General Laws. It also set forth numerous causes of action, including unlawful revocation of their foster-parents' license, defamation, conspiracy, obstruction of justice, and judicial misconduct. Among other charges, plaintiffs suggested that DCYF had denied them their due-process rights by revoking their foster-care license without the benefit of a pre-revocation hearing, relying upon G.L.1956 § 42–35–14(c) (where public health, safety or welfare imperatively requires emergency action, DCYF may summarily *suspend* (but not *revoke*) a license pending proceedings for revocation).[4] And plaintiffs' prayer for relief sought, inter alia, to have their foster-parents' license restored and their foster care children returned.

Therefore, DCYF moved for judgment on the pleadings under Rule 12(c) of the Superior Court Rules of Civil Procedure. First, it argued that most of plaintiffs' claims were barred by the doctrine of res judicata because they were merely attempts to relitigate the identical issues that had been previously adjudicated with finality in the Family Court concerning the constitutionality of the state's revocation of plaintiffs' foster-care license. In addition, DCYF contended that plaintiffs' "new claims" concerning judicial misconduct against the Family Court justices who ruled on their case were not only unfounded but were untenable in any event because of the doctrine of judicial immunity. After a hearing, a Superior Court justice dismissed plaintiffs' complaint, agreeing with DCYF that plaintiffs were "now asserting the same issues presented to [the Family Court justices]" and that plaintiffs complaint should

---

**2.** Section 8–10–3 of the General Laws provides, in pertinent part: "The family court shall have exclusive initial jurisdiction of all appeals from any administrative agency or board affecting or concerning children under the age of eighteen (18) years."

**3.** Nevertheless, at a hearing on plaintiffs' motion to vacate, the Family Court justice accepted for the record on appeal an amended complaint submitted by plaintiffs that constituted fifty-four pages and contained over thirty exhibits.

**4.** Because of the fragmentary record before us, we are unable to determine with certainty wheth-

er plaintiffs raised the constitutional due-process argument before the Family Court on its administrative appeal. However, we note that plaintiffs were certainly not barred from doing so. *See* G.L.1956 § 42–35–15(g)(1); *Randall v. Norberg*, 121 R.I. 714, 721, 403 A.2d 240, 244 (1979). Moreover, for purposes of res judicata, even claims that could have been raised in a lawsuit but were not are still foreclosed from later litigation if they are derived from the same transaction or series of connected transactions. *See ElGabri v. Lekas*, 681 A.2d 271, 276 (R.I.1996) (citing 1 Restatement (Second) of Judgments § 24).

therefore be dismissed on res judicata grounds. Accordingly, the justice entered judgment for defendants.

The doctrine of res judicata renders a prior judgment by a court of competent jurisdiction in a civil action between the same parties conclusive as to any issues actually litigated in the prior action, or that could have been presented and litigated therein. *ElGabri v. Lekas,* 681 A.2d 271, 275 (R.I.1996). Essentially res judicata serves as an " 'absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action.' " *Gaudreau v. Blasbalg,* 618 A.2d 1272, 1275 (R.I.1993). DCYF posits that plaintiffs' complaint is essentially a collateral challenge to the propriety of the Family court's upholding of DCYF's revocation of plaintiffs' foster-care license. It claims that the earlier lawsuit involved the same parties and the same issues, and culminated in a final, unappealed judgment dismissing their claims.

Although we concur that the Family Court was the appropriate forum to hear plaintiffs' administrative appeal, *see* § 8–10–3(e), the Superior Court erred in giving res judicata effect to any Family Court judgment in light of the patchy record and pleadings presented for its consideration. Among other things, we note that the record upon which the Superior Court ruled contained no evidence of any final judgment of the Family Court in the earlier action, nor were there any transcripts or decisions embodying its rulings. Likewise, the record was barren of any pleadings from that earlier action. This omission weights heavily against DCYF and the other defendants because it is well established that, although the Superior Court may in its discretion take judicial notice of prior judgments, *see Perez v. Pawtucket Redevelopment Agency,* 111 R.I. 327, 336, 302 A.2d 785, 791 (1973), the party seeking the benefit of res judicata has the burden to plead and prove the judgment upon which it relies. *See*

18 *Moore's Federal Practice,* § 131.52[1], at 131–176 (3d ed.1998).

In light of the foregoing and because a determination of res judicata generally requires the court to look beyond the pleadings to the judgment and other pertinent portions of the record in the prior action (which had not been presented to the Superior Court and have not been provided to us by the parties on appeal), we conclude that this Rule 12(c) motion should more appropriately have been treated as a motion for summary judgment. "If on a motion for judgment on the pleadings, matters outside the pleadings [the alleged Family Court final judgment and its purported res judicata effect] are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion." *See* Super.R.Civ.P. 12(c). Accordingly, we vacate the judgment of the Superior Court and remand the case to that court so that it might treat DCYF's motion as a motion for summary judgment after all parties have been "given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *See* Super.R.Civ.P. 12(c). Because defendants have asserted the defense of res judicata, it shall be their burden to present the court with all transcripts, judgments, pleadings, and orders as may be necessary to adjudicate this issue.[5]

Finally, with regard to plaintiffs' petition for a writ of habeas corpus, we conclude that foster parents lack standing to bring such a petition because the children here are not imprisoned but in the care of their legal guardian, DCYF. *See* G.L.1956 § 10–9–1 (only "[a] person imprisoned in any correctional institution or otherwise restrained of his or her liberty * * * may prosecute a writ of habeas corpus * * * to obtain relief from the imprisonment or restraint, if it shall

---

5. Because we believe that the judicial immunity defense may also be affected by the res judicata determination, we refrain from addressing this issue and leave it to the Superior Court on remand to determine in the first instance whether any final judgment has been rendered by a court

acting within its jurisdiction and then to address the issue of judicial immunity. *See Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (damages award); *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) (injunctive relief).

prove to be unlawful"). Accordingly, we deny this petition.

## Conclusion

For these reasons, we sustain the plaintiffs' appeal, vacate the Superior Court's judgment, and deny the plaintiffs' habeas corpus petition. The papers in the case shall be remanded to the Superior Court for further proceedings consistent with this order.